Case 2:18-cv-00145 Document 28 Filed on 02/24/20 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
February 24, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| LARRY GARNER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL NO. 2:18-CV-145 |
| § | |
| GOOD SAMARITAN RESCUE § | |
| MISSION, § | |
| § | |
| Defendant. § | |

# ORDER

The Court is in receipt of the Joint Motion for Settlement, Dkt. No. 25, and Plaintiff's Motion for Attorney's Fees, Dkt. No. 27. For the reasons below, the Court **GRANTS** the Joint Motion for Settlement, Dkt. No. 25, and **GRANTS** Plaintiff's Motion for Attorney's Fees, Dkt. No. 27.

## I. Background

On January 19, 2018, Plaintiff Larry Garner filed suit to recover overtime wages and damages under the Fair Labor Standards Act ("FLSA") against Defendant Good Samaritan Rescue Mission. Dkt. No. 1. Plaintiff argues that Defendant unlawfully withheld overtime wages when he worked at Defendant's homeless shelter. *Id.* at 2.

The parties reached an agreement to settle this lawsuit and have filed their Joint Motion for Settlement, Dkt. No. 25. Plaintiff also filed a Motion for Attorney's Fees, Dkt. No. 27. The Court now considers the pending motions.

## II. Settlement Terms

The parties reached a settlement based on a payment to Plaintiff reflecting a compromise but not an admission of liability. Dkt. No. 25-1 at 3. Under the settlement agreement, Defendant will pay a total sum of $14,500.00—$6,000.00 to

Plaintiff, and $8,500.00 in attorney's fees, costs, and expenses. *Id*. Plaintiff will receive his share of the settlement as follows: (1) one half as back wages, from which taxes will be withheld and for which a W-2 will be issued; and (2) one half as liquidated damages, for which a Form 1099 will be issued. *Id*. at 2–4. In exchange for the payments set forth in the settlement agreement, Plaintiff waives, releases, and gives up any and all rights, claims and causes of action and/or damages which he has pled or that he could have pled of any character, in contract, tort, under the FLSA, or otherwise, based on actions or omissions occurring in the past and/or present, including those rights to recover any benefits, wages, liquidated or other money damages or otherwise not specifically mentioned in the settlement agreement. *Id*. at 1–2.

## III. Motion for Approval of Settlement Agreement
### a. Legal Standard

Courts may approve FLSA settlement agreements only if they reflect "a fair and reasonable compromise of a bona fide dispute under the FLSA." *Beardslee v. Randalls Food & Drugs LP*, No. H-09-1200, 2009 WL 1957714, at *1 (S.D. Tex. July 7, 2009). When scrutinizing an FLSA settlement agreement, courts first look to the existence of a bona fide dispute. *Villeda v. Landry's Restaurant, Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009). A bona fide dispute as to liability exists where the evidence in the record is inconclusive as to the hours worked or the amount of compensation owed. *Sandlin v. Grand Isle Shipyard, Inc.*, No. 17-10083, 2018 WL 2065595, at *6 (E.D. La. May 3, 2018). For example, parties may point to conflicting evidence in the record as to the hours worked or wages owed[1] or evidence demonstrating that it is impossible to determine those amounts.[2] Submission of the

---

[1] *See Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) (finding bona fide dispute where plaintiff maintained in his statement that he was owed over $3,000 in overtime compensation and defendants presented conflicting evidence that plaintiff was owed only $509.06).

[2] *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012) (finding bona fide dispute where evidence included union representative's conclusion that "it would be impossible to determine" actual hours worked).

settlement agreement containing conclusory language stating the release of claims in exchange for a certain amount, without more, is insufficient to prove a bona fide dispute.[3]

Courts then look to whether the proposed settlement is a fair and reasonable compromise over the issues. "If the settlement reflects 'a reasonable compromise over the issues,' the court may approve it." *Villeda*, 2009 WL 3233405, at *1. (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *see also Jarrard v. Se. Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947). "The standard for whether a class action settlement should be approved is whether the settlement is 'fair, adequate and reasonable' and has been entered into without collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lynn's Food Stores*, 679 F.2d at 1355.

"Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires a court approval to finalize a proposed class action settlement." *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). "Thus, the Rule 23(e) standard encompasses the 'fair and reasonable' settlement standard of the FLSA collective action, and cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action." *Id.* at 2. (quoting *Altier v. Worley Catastrophe Resp., LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012)).

The Fifth Circuit directs courts to consider six factors in evaluating proposed settlement agreements in class actions: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of

---

[3] *See Lopez v. S. Arch, LLC*, No. 15-6302, 2016 WL 3617671, at *5 (E.D. La. July 6, 2016) (finding no bona fide dispute where parties only offered as evidence the settlement agreement containing "broad, boilerplate language stating that plaintiff released all claims [and] acknowledged that 'he is entitled to receive no other payments, benefits, or compensation' from Defendants besides his $500 settlement").

damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "While these six factors are more applicable to a collective action under FLSA than an action involving a single plaintiff, the Court will use them to guide its analysis to the extent feasible." *Rosa v. Gulfcoast Wireless, Inc.*, Civ. No. 18-4577, 2018 WL 6326445, at *2 (E.D. La. Dec. 3, 2018).

### b. Bona Fide Dispute

Plaintiff alleges the following in his complaint: Plaintiff worked for Defendant within three years of filing suit. He was supposed to be paid on a salary basis but did not receive a guaranteed salary of at least $455.00 per week at any time during employment. He regularly worked 50–55 hours per week and was not paid overtime wages for hours worked in excess of 40 hours a week. Dkt. No. 1 at 2. Defendant denies all allegations and liability. Dkt. No. 9.

After review, the Court finds the existence of a bona fide dispute as to overtime compensation owed. Plaintiff alleges that he deserves overtime pay for hours worked beyond the 40-hour workweek, while Defendant asserts that Plaintiff is exempt from FLSA coverage and was properly paid for all hours worked. The Court therefore concludes that the parties' disagreement over overtime pay owed sufficiently amounts to a bona fide dispute.

### c. Fair and Reasonable Compromise

As stated above, the Court examines the following six factors to determine whether a settlement is "fair and reasonable": (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent

class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Court reviews each factor in turn:

1. The parties were represented by counsel and reached their proposed settlement through arm's length negotiations. Accordingly, there is no concern of fraud or collusion behind the settlement. *See Batchedler v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 526 (N.D. Miss. 2003).

2. The parties exchanged written discovery and expressed their intent to take various depositions prior to the close of discovery, in addition to trying this case, which would require additional time and expenses. *See* Dkt. No. 12 at 3–4. A lengthy trial would consume court resources, expand parties' costs, and delay any eventual recovery. *See Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2008 WL 9410399, at *4 (S.D. Tex. May 7, 2008).

3. The parties engaged in discovery and arm's length negotiations. *See* Dkt. No. 27-2. The discovery and negotiations that took place before reaching settlement enabled counsel for the parties to carefully assess the legal and factual merits of the case. *Quintanilla*, 2008 WL 9410399, at *4.

4. The parties disagreed whether Plaintiff could satisfy his burden of proving the number of overtime hours worked. *See* Dkt. No. 12 at 2, 5. It is therefore possible that Plaintiff would not have prevailed on the merits.

5. The settlement will pay Plaintiff a fair recovery for unpaid overtime wages. Defendant asserts that Plaintiff is entitled to no recovery but has agreed to pay him $6,000.00 to resolve the dispute. Dkt. No. 25-1 at 2. The Court also takes into account "the risks inherent in this litigation, as well as the costs of litigation" in determining whether the settlement amount is fair and reasonable. *Quintanilla*, 2008 WL 9410399, at *5. Further, proposed settlements that amount only to a fraction of the potential recovery do not indicate that the settlement is not fair and reasonable. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974).

6. The settlement is the product of arm's length negotiations after investigation and legal analysis by the parties' counsel. Dkt. No. 25 at 2. The parties

entered into the settlement agreement voluntarily and knowingly. Dkt. No. 25-1 at 1. The terms of the settlement have been approved by Plaintiff, Defendant, and their respective counsel. *Id.* Endorsement of a proposed FLSA agreement by counsel for both parties is a "factor that weighs in favor of approval." *Quintanilla*, 2008 WL 9410399, at *5.

After review, the Court concludes that the proposed settlement agreement is a fair and reasonable compromise of Plaintiffs' bona fide FLSA dispute.[4]

## IV. Attorney's Fees

### a. Legal Standard

Under the FLSA, courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts use the lodestar method to assess attorney's fees in FLSA suits. *See Saizan v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "In calculating a lodestar, the number of hours reasonably expended are multiplied by an appropriate hourly rate in the community for such work." *Villegas v. Regions Bank*, No. H-11-904, 2013 WL 76719, at *2 (S.D. Tex. Jan. 4, 2013) (citing *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)).

The party seeking reimbursement of attorney's fees "bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence." *Ranger v. Gonzalez Mascorro*, 274 F.R.D. 585, 595 (S.D. Tex. 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). The court should use this time "as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented." *Id.* (citing *Watkins*, 7 F.3d at 457). The hours remaining are those reasonably expended. *Id.* However, the court anticipates that "[c]ounsel exercises billing judgment when it documents hours charged and the

---

[4] For future filings, the Court reminds the parties to provide a more comprehensive analysis of all factors relevant to the approval of a settlement agreement. A mere recitation of the factors is insufficient to warrant approval.

hours written off as unproductive, excessive, or redundant." *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-295, 2016 WL 4594945, at *2 (S.D. Tex. Sept. 2, 2016).

A reasonable hourly rate should be determined based on "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Rangel*, 274 F.R.D. at 596 (quoting *Normam v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)) (internal quotation marks omitted). The relevant legal community is the community in which the court sits. *Id.* (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). "The movant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates in the community." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Proper evidence of a reasonable hourly rate "includes an attorney's own affidavit presenting information as to the rates actually billed and paid in similar lawsuits." *Id.* (citations omitted). Generally, however, the reasonable hourly rate for a community is established "through affidavits of other attorneys practicing there." *Id.* (citing *Tollett*, 285 F.3d at 368). Such affidavits "should contain direct or opinion evidence as to what local attorneys would charge under similar circumstances." *Id.* (citation omitted).

"After calculating the lodestar, the court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors."[5] *Williams v. Best Temp. Servs., LLC*, No. 3:14-CV-484-D, 2015 WL 12763509, at *3 (N.D. Tex. Aug. 18, 2015) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995)).

---

[5] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).

"Because the lodestar is presumed reasonable, it should be modified only in exceptional cases." *Id.* (citing *Watkins*, 7 F.3d at 457).

### b. Legal Analysis

The first step in computing the lodestar is determining the reasonable hourly rate. *Villegas*, 2013 WL 76719, at *3. Plaintiff seeks a $425 hourly rate for Clark Woodson III ("Woodson"). Dkt. No. 27 at 3. In support of the motion, Woodson submits an affidavit attesting to his experience and thus the reasonableness of the requested hourly rate. *See* Dkt. No. 27-1, Ex. A, Declaration of Clark Woodson III. Woodson has been a licensed attorney in Texas since 1995, has primarily litigated FLSA lawsuits in the last 10 years, and has been certified in Labor and Employment Law by the Texas Board of Legal Specialization since 2005. *Id.* Given Woodson's experience and relevant caselaw, the Court determines that the proposed hourly rate is reasonable. *See, e.g.*, *Cantu v. Hinojosa*, No. 2:16-CV-287 (S.D. Tex.) (Tagle, J.).

The second step in the lodestar calculation of attorney's fees is determining the number of hours that were reasonably expended on the litigation. *Villegas*, 2013 WL 76719, at *3. Plaintiff represents that 56.60 hours were expended on the case, so counsel would be entitled to $24,055.00 in attorney's fees. Dkt. No. 27 at 3. However, in exercising billing judgment, counsel has agreed to a significant reduction in attorney's fees for settlement purposes and therefore seeks a total of $8,500.00 in attorney's fees. *Id.* The Court concludes that under these circumstances, it is appropriate to award $8,500.00 in attorney's fees.

## V.  Conclusion

For the reasons above, the Court **GRANTS** the Joint Motion for Settlement, Dkt. No. 25, and **GRANTS** Plaintiff's Motion for Attorney's Fees, Dkt. No. 27.

The Court **DIRECTS** the Clerk to close the case.

SIGNED this 24th day of February, 2020.

Hilda Tagle
Senior United States District Judge